The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention to the Court's next sitting. God save the United States and this Honorable Court. Please be seated. Welcome to the Fourth Circuit. This morning we'll hear argument in three consolidated cases. Counsel for Appellants, we'll hear from you first. Good morning. Thank you, Your Honor. Asim Ghafour, Counsel for the Appellants, al-Suyid, Hamza, and al-Zaghawi. Good morning, Your Honors. We are here today because the District Court erred in dismissing this case with prejudice on personal jurisdiction. We're asking the Court to consider remanding to the District Court to have a trial on the merits and on damages. In the alternate, we ask that you remand it for jurisdictional discovery after four years of discovery with the defendant, who is a U.S. citizen, who availed himself of contacts throughout the U.S., as the record shows, throughout Virginia. We believe that it should be, this Court should have jurisdiction, should find that there is jurisdiction, but if the Court here is not ready with the record to do so, send it back to the District Court to have jurisdictional discovery. At the very minimum, we believe our appellants, the appellants need their day in court against the U.S. citizen in a U.S. court. Even though nothing happened in the U.S., everything happened in Libya, we believe that this Court should send it back and dismiss it without prejudice. And with the tolling statutes and the TVPA, the Torture Victim Protection Act, where there's only one count in these consolidated cases, we believe we would be able to replete, refile, and start all over again. Is there anything in the record about the source of the defendant's United States citizenship? How did he end up as a U.S. citizen? In the discovery, we asked him. He fled Libya in the 1990s, and he came here and resided in the U.S. as a U.S. citizen.  And obtained U.S. citizenship. So this isn't someone who's a citizen by some accident of birth, who just happens to be born of a person who happens to be a U.S. citizen or a person who is born in the United States and then leaves the United States never to return. So this is a person who, like, decided to get U.S. citizenship? Yes, Your Honor. He decided to get U.S. citizenship and lived here for a number of years, many decades, and never renounced it. He said under oath in the deposition he did not renounce his U.S. citizenship since then. Did he say why he didn't renounce it? No, Your Honor. He didn't. Yeah. But he's continued to avail himself even after leaving the U.S. in 2011. He has had agents hire a PR firm. He himself signed a contract. The record showed in the Hamza case that there was a contract. We did not brief it extensively. Opposing counsel objected to including it in the joint appendix. But there was a contract signed. And if it were sent back to the court, we would definitely look into that contract that was signed and have more details about that. Is there anything in the record about where this property is or what it is? Yes. In the joint appendix, there are copies of the deeds in Fairfax County as a condominium. And the address is in there in the joint appendix of the property that he owned. And, again, as the court addressed last week, if you read further down, if the court here finds that the Virginia long-arm statutes do not apply under federal rule of civil procedure 4K2 and the Blackmer case, which this court brought to our attention, we did not brief this case, neither did opposing counsel as far as I can tell in the record. This is very compelling. And, you know, if I quote from the Blackmer case, by virtue of the obligation of citizenship, the United States retained its authority over him. This is the gentleman, Blackmer, in France. And he was bound by its laws made applicable to him in a foreign country. That's page 436 and 437. This is a very compelling case where a U.S. citizen had moved to France and was held not in a civil case. It was a criminal case. But he was subpoenaed and he was forced by the U.S. Supreme Court. This is still good law. It has not been overturned in almost 100 years. And this to us tells us that even if this court, this is a fallback for us in the appellant side, even if this court were to find that there are no Virginia contacts, he had left, he sold the condo, anything of that nature, we believe that this subsection 4K2, read in the light of Blackmer, shows that the U.S. government and the courts of the U.S. still maintain jurisdiction over. But the Blackmer case involved a teapot dome scandal, as I recall. But there was no 4K2 analysis because it didn't exist then. So do you think that that is incompatible? Well, like I said, the facts are distinguishable. And, again, it's a fallback for us. We don't have to rely on Blackmer for you to rule in our favor in this case, we believe. But the significance of Blackmer was this was a U.S. citizen who had not renounced his citizenship, moved to France, and refused to comply with a subpoena and was forced to do that. Again, it was, like Your Honor mentioned, it was a criminal case. It was a criminal investigation. Although we believe the defendant has committed war crimes, our focus in this case and our litigation is a civil one count under the Torture Victim Protection Act for damages. Are you aware of any court that has applied Blackmer or that sort of constitutional analysis to exercise jurisdiction over a defendant in a civil case? You pointed out that Blackmer was contempt for not responding to a court order in a criminal case. And that seems to be where it comes up most often. You're right, it's still applied usually in that context. I haven't found any court citing it to exercise jurisdiction over a defendant in a civil case. But you may have looked into this more. No, Your Honor. We have not found a case either, either in the Fourth Circuit or any other circuit. Because it's still, that's part of, that's the second part of the 4K analysis, right? It's the long arm for context with the country in general. But then it still has to comport with due process, which our court has just, it seems like we have followed the traditional minimum context analysis in other 4K cases. Yes, Your Honor. Like I said, we did brief on 4K too, on Blackmer. We did not think it was important to, in the initial, when we even originally brought the case, and when the other point that we brought up in our brief is that the defendant waived his objections to personal jurisdiction, never brought it up under 12H1, and never brought it up in his extensive pleading. Brought it up in the last minute in the motion for summary judgment, which were in the record. Is that different between the three cases? Is there a distinction in the three cases that are in front of us today on whether he waived his defense or not? No, Your Honor. It was all three cases he waived it. Well, but isn't that wrong? Because in Hamza, didn't he raise personal jurisdiction in his very first motion to dismiss? And he cited Federal Rule of Civil Procedure 12B2 in his first motion to dismiss in Hamza? That might be the case, Your Honor. Yeah, I apologize for that. I was not the attorney of record in Hamza. Well, I thought, I mean, following up Judge Hyten's, there's only one of the three cases where the jurisdiction is raised. The other two is waived. Yes, Your Honor. So what do we do with that problem? Does consolidation solve that problem? I have doubts about that, but you may convince me. Yeah, well, Your Honor, again, in al-Zaghawi and al-Swayed, our position has always been, which of the cases that I was involved with at the trial court, that we, that it was waived. And when the argument was brought up in the motion for summary judgment, it stayed very late in the litigation. We brought it up, and Judge Brinkema didn't really address it. She didn't, I mean, she obviously disagreed with us. So we believe that in a consolidated case, these are different plaintiffs. Hamza has separate cause, the same cause of action, but separate torture and separate allegations of killing than al-Zaghawi, and separate ones, of course, than even al-Swayed. Al-Swayed, al-Zaghawi is in a different city altogether. It's not even in Benghazi. It's in Tripoli. So our position would be that the waiver in the other two cases would constitute a lack of personal jurisdiction. I mean, lack of, inability to bring up the personal jurisdiction argument and allow the Hamzas to, if it's dismissed with prejudice, allow Hamza to file another lawsuit with the tolling provisions. So we still believe all three parties would get their day in court, even though it was only waived. Can I just, I have two factual questions. I think based on what you said, I know the answer, but I want to give you a chance to tell me if I'm wrong.  To the best of your knowledge, at any point before the district court, did the plaintiffs ever cite federal of sale procedure 4K2? I did not see it anywhere in the record. And to the best of your knowledge, before the district court, did the plaintiffs ever assert that Hifter was subject to personal jurisdiction in the United States, not via the Virginia long-arm statute, but based on his contacts with the United States as a whole? I beg your pardon. Did who allege? Did any of the plaintiffs in any of the cases allege that? So like one theory of why he's subject to personal jurisdiction is because you sort of incorporate the Virginia long-arm statute. But rule 4K2 has another, and it says that if there is no state, you could do it based on the defendant's contacts with the United States as a whole, as long as that's consistent with due process. Did the plaintiffs ever argue before the district court that he was subject to personal jurisdiction in the Eastern District of Virginia, not via the Virginia long-arm statute, but via his contacts with the United States as a whole? Yes, Your Honor. Where? Sorry. No, we only did it from the long-arm statute. Okay. So that also was never argued before the district court. It was never argued before the court. Yes, Your Honor. Thank you. I thought somebody just wanted to give you a chance to refine that.   Okay. So taking you to the Virginia long-arm statute for a minute. Yeah. Mm-hmm. So could you just, I think I know them, but again, I want to make sure I'm missing them. What are the things that you think makes him subject to personal jurisdiction in Virginia? It was many things. He lived in Virginia. In the past. That seems, I lived in Wisconsin for the first 18 years of my life. I am definitely not subject to personal jurisdiction in Wisconsin. Right. And from the record, he never moved to another state. He stayed in Virginia until he left the United States. But you can be a U.S. citizen who has no U.S. domicile, right? Right. Well, he maintained property after he left. Sure, but my parents, actually, no, I have a friend who owns a condo in West Virginia. That doesn't mean he's subject to personal jurisdiction in West Virginia, right? All right. Well, he, his sons came regularly and lived in his house. He kept a family. My parents have children who live in Louisiana and Virginia. They're not subject to personal jurisdiction in Louisiana or Virginia, right? Right. Well, yes, Your Honor. And then he, when he, things were getting hot in Libya, he had agents hire a lobbyist, a PR firm for him in Virginia, and then he personally signed a contract to hire a lobbyist years after that. And that is or is not in the record? Was that before Judge Brinkman? Yes, it was before Judge Brinkman. And where in the record is it? In the Hamza case. In the Hamza case? Yes. But only in Hamza? Only in Hamza on the second contract that he signed. The first contract was brought up in all the cases. And where in the record does it say that? It was in, I don't have a joint opinion. Is it in the briefs? Yes. It's in the briefs? Yes, it's cited in our brief and it's in the thing. And there's a Maryland court, which the Fourth Circuit upheld, that if there's a contract that's signed, it may allow jurisdiction. In that case, which I cited in our brief, the jurisdictional clause was the lawsuit will not be brought in Maryland. And the Fourth Circuit upheld that. But there was no discovery on the record on what that contract said. And that would have to be remanded to Judge Brinkman. In our contract that Hamza signed, that Hamza cited, the contract itself is not cited. What is your best evidence in the record that the defendant was ever actually domiciled in Virginia? I mean, you can own property in Virginia without being domiciled in Virginia. If I was looking in the record for the best evidence that he was ever actually domiciled in Virginia, where would I find that? That would be from the public records of the property he owned and is well known. People can absolutely own property in places without being domiciled there. Well, he lived in those properties. How do I know? What I'm asking you is how do I know that? It was a public record. We were unaware of that. We were not following him in the 1990s. No, but you could have asked him in his deposition. Did you ever live in Virginia? Yes, yeah. He did say in his deposition he did live in Virginia. He admitted that, Your Honor. And the main point, again, that we like to say is that the long-arm statute, the law basically allows, it's fair play. If he never lived in the U.S., never had citizenship, nothing happened in the U.S., our first claim that in our initial lawsuits, at least in Al-Swayed, what I was involved with, and in Al-Zaghali, we'd also sued under the Electoral Claim Act, which had to touch and concern the U.S., and we dropped that claim. So we recognize that there are a lot of barriers for us to bring many claims against Khalifa Haftar. However, we strongly believe that the appellants deserve their day in court. They deserve a trial. They deserve a full trial, whether it's jurisdictional discovery, whether it's refiling it. We're happy to go through that. What specifically jurisdictional discovery do you think is necessary? You've deposed the defendant. Yeah. Focusing on this contract, the subsequent contract he signed, we did not flesh that out in the record. Looking at that contract, he hired lobbyists personally. I may have the timing. Why couldn't this have been asked about during the deposition of the defendant you already took? Yeah, that was the second contract came up later. We were not aware of it at the time. But it's in the Internet. You can take judicial notice of it. It's on the U.S. DOJ website as a Foreign Agent Registration Act registration. And the copy of the contract with the jurisdictional information is all in there. I did not brief it because, you know, it wasn't brought up, unfortunately, at the trial. Have you already taken a voluntary dismissal of these cases? Have you already taken a voluntary dismissal? No, Your Honor. We're challenging the dismissal with prejudice. But we have not sought to dismiss it. We seek your reversal and remand for a trial. All right. Thank you, counsel. We have some time on rebuttal. Okay. Well, you're from the appellees. Good morning, Your Honors, and may it please the Court. My name is Madison Beatty, and I represent the appellee, Khalifa Hifter, in the three cases before you today. The issue before you is simple. Does the Court have personal jurisdiction over Mr. Hifter? Mr. Hifter has objected to this Court's jurisdiction at every stage of this proceeding, including service of process. At no point did Mr. Hifter waive his objection to this Court's jurisdiction over him. Well, don't you have to, I mean, you can object to jurisdiction for lots of different reasons. But in at least two of these cases, he didn't object to the due process sort of personal jurisdiction arguments that we're talking about today, right? Your Honor, he mentioned there was insufficient service. Therefore, there was lack of personal jurisdiction. But that's a B-5 problem or a B-4 problem. It's not a B-2 problem. And in two of these three cases, he never said the words B-2. He never said the words international shoe. He never said Pennoyer v. Neff. He never said Daimler. He never said – he never made anything that looks like a personal jurisdiction argument. Understood, Your Honor. Well, I'm giving you – that is my impression. If I'm wrong about that, please tell me. But when I read his initial motions to dismiss in two of the three cases, I do not read him as saying anything that looks like a personal jurisdiction argument. Am I wrong about that? Your Honor, we would contend that he's challenging personal jurisdiction through insufficient service of process, which is necessary for Rule 4K2. Sure. No. I'm just – I guess take a high level of generality back, right? Personal jurisdiction is about two things. It's about notice and it's about power. The way we give people notice is that we serve them, and that's Rule 4. But the way we get power is via the long-arm statute and the due process clause. And I definitely agree with you that he made arguments about the former. I wasn't served in the right way, and as a result, I didn't have proper notice. But I don't see him anywhere in his first motion to dismiss in two of these three cases where he said anything that looks like the court does not have constitutional power over me. Your Honor. Am I wrong about that? Your Honor, we would contend that the personal jurisdiction raised in HAMSA attaches to El Suede and El Zoghali. How does that possibly square with Rule 12? Rule 12 – when I used to teach CivPro, I would literally say personal jurisdiction is very powerful, but it's also very fragile. And in a nutshell, what Rule 12 says is the first piece of paper you file with the court, darn well better say no personal jurisdiction. Because if it doesn't, that's gone. And I understand these three cases were consolidated later, but they weren't consolidated when he filed his initial motions to dismiss. Right? So what is the authority for the – I mean, this is what Judge Brinkman said, and I understand there's a practical logic to it. But I didn't see her cite any authority for this proposition, and I'm not seeing you cite any authority, which is to say, like, a dead, dead, dead personal jurisdiction argument can be resurrected if your case is later consolidated into another case where someone properly raised a personal jurisdiction defense. Your Honor, Rule 12b-2 is not specifically mentioned, but it does say lack of personal jurisdiction in the initial pleadings in El Zoghali and El Suede. It says that. Sure, but that's an argument that it was adequately raised in the first motion. I'm sorry. I was moving to what I understood to be the basis of the district court's decision, where she – I don't read Judge Brinkman as buying the argument you're making now. What I read Judge Brinkman was buying the argument of, like, these cases are really just all the same kind of case, and it was definitely preserved maybe in one case or go. I guess she also says he raises some, like, immunity defenses, but those aren't personal jurisdiction. Right? So what is your – what if any – but I was responding to the question, this thing you had said a minute ago where you said, well, we think the fact that it was raised in Hamza is enough to raise it in the other two cases. And I guess what I was saying is, what is your best authority for the proposition that the fact that it was waived in one case is vitiated if later that case is consolidated with another case where it wasn't waived? I didn't see any authority for that proposition. I don't have any authority for you today, Your Honor. Okay. With that in mind, there's no general personal jurisdiction over the defendant. He is domiciled in Libya and has been since 2011, which the complaints initially mention. And there's no specific jurisdiction under Virginia's long-arm statute. Virginia's long-arm statute is very specific. It gives about 20 grounds for a cause of action to arise from a Virginia context. These three cases don't arise from any Virginia context. All of the events occurred in Libya. Lastly, there is no jurisdiction under Rule 4K2, and we would contend that that argument has been waived because it has never been brought before the Court. There is no evidence, despite that, there is no evidence that Mr. Hipta has continuous and systematic contacts with the United States. I'm sorry, but the theory would not be, well, actually, wait. How is that possibly consistent with blackmail? I mean, like, I'm literally listening to the argument that he's not subject to general jurisdiction in the U.S. by virtue of his U.S. citizenship, and every single argument against that is refuted at blackmail. Like, I'm literally looking at 425 of blackmail where they're citing the unsuccessful litigants' argument in blackmail, and at the top of 425, he literally cites Penoyer v. Neff for the proposition, you can't grab me outside the United States. I mean, he is making what looks for all the world like a personal jurisdiction argument, and the Supreme Court says, totally, that's not right. I mean, what I sort of understand the Court to say in blackmail is, like, what part about being a U.S. citizen do you not understand? Being a U.S. citizen means you just don't get to argue, I don't have enough of a connection to the United States to be sued in the United States. If you don't want to be subject to jurisdiction in the United States as a matter of due process, don't be a U.S. citizen. Like, why would that be different in the personal jurisdiction context? Your Honor, in that context, the criminal acts occurred in the United States, and he was a witness to those criminal acts, so they had specific jurisdiction under the due process clause. I don't read blackmailers saying they're specific jurisdiction. I read blackmailers sounding very much what we would now call general jurisdiction, that being a U.S. citizen means you have no due process right to not appear in court in the United States. Your Honor, I do also think there's a difference between a witness subpoena and handling someone to court under Rule 4K2 for any action, if you were a United States citizen with no connection to the forum. I think the implications of that are far-reaching. Someone was born here and left at age 2, and they could have kept their citizenship. But do you agree with your friend on the other side that that does not describe this individual? This is an individual who decided to get U.S. citizenship. Your Honor, I think that history is complicated. He had a—he was— Are you challenging the statement that in the deposition, your own client admitted that he was not a citizen at birth, but rather was someone who was naturalized? No, I am not challenging that, Your Honor. I think he—from Mr. Hifter's deposition, it was mentioned that he was under the Qaddafi army, and then he came to the U.S. subsequently after that. I think it's a complicated history, and it's not just that he— He's not an accidental citizen. He's not someone whose parents were, like, on a weekend trip in the United States, and he happens to be born in the United States. He's not someone whose grandmother was a United States citizen, and so, like, turns out he's a U.S. citizen, right? This is a person who decided to become a U.S. citizen. Correct, Your Honor. And do you also agree with your colleague on the other side that he— the evidence in the record is that he has never renounced his— I mean, another solution would be don't want to be subject to the power of the U.S. courts? Renounce your citizenship. Do you disagree that your own client testified that he has never renounced his U.S. citizenship? He has never renounced his citizenship under his testimony, Your Honor. And why do you suppose that might be? Your Honor— Because he might want to come back to the United States someday? Your Honor— Why else would this individual not renounce his U.S. citizenship? Your Honor, Mr. Hifter is 81 years old, and he is leading his people in the eastern side of Libya. There has been no indication after 10 hours of deposition testimony that he has any interest in returning to the United States? I'm just trying to figure out what the logical inference of why this individual wouldn't renounce his U.S. citizenship is. Your Honor, his goal, and from what the deposition showed, is that he's trying to bring peace to Libya. And I think that may have a play in it, but I don't know how to think about what his intentions are. Understood. Despite that, I think Blackmore is still very different. I think considering a witness subpoena for a cause of action that arose in the United States is vastly different than what we're asking the Court to consider here. The subpoena power of the Attorney General's Office is completely different standards for United States citizens than the analysis we're required to look at under the 14th Amendment for Rule 4K2. And I think Mr. Hifter's due process rights would be violated if jurisdiction were held on him through the Blackmore analysis. In the Hamza case, well, we've talked about how in the other two this was not preserved, but in Hamza it was preserved. But the district court judge dismissed with prejudice. Do you have any authority that supports dismissing on jurisdictional grounds with prejudice? All the personal jurisdiction cases I've seen say it must be without prejudice. But do you disagree? I don't have any authority for you, Your Honor, on that. But I do know that the case has been pending. This is not a personal jurisdiction case that was decided at the motion to dismiss stage. This was decided at the motion for summary judgment stage. Does that matter? Is that dispositive in any case where we've said the court lacks jurisdiction, right? It doesn't have authority over the defendant. The whole premise of that is that you can't make any sort of ruling with prejudice because you don't have authority. Why should it matter if it happens at summary judgment versus motion to dismiss? Your Honor, after four years of discovery, the appellants had sufficient time to establish ties to this jurisdiction and filing another lawsuit a year later. Well, but that's confusing two types of preclusion, right? So say it's a dismissal for lack of personal jurisdiction without prejudice. That's not to say that would have no effect, because if the plaintiffs then turned around and tried to sue him in Virginia again, there would be issue preclusion about the question about whether a Virginia court has personal jurisdiction over him. So it's not like it's a free bite of the apple. Even if it was dismissed without prejudice, they can't refile an EDVA because then there would be issue preclusion. The question is if they try to file somewhere other than Virginia, and your whole point, and your colleague has commendably conceded this, it has never been considered whether he might be subject to jurisdiction somewhere other than Virginia. And if it was without prejudice, they could try. I'm not saying it's going to work. I mean, it seems like there would likely be formidable barriers, but at least they could try. Whereas if it's without, if it's with prejudice, it's claim preclusive. If it's without prejudice, it's issue preclusive but not claim preclusive. So to re-ask Judge Rushing's question, like why would you possibly dismiss for lack of personal jurisdiction with prejudice? Your Honor, I think the reasoning is that it's been pending for four years and they've had sufficient time. Right. I have no authority that says anything differently. For the above-mentioned reasons, the appellee respectfully requests that this court affirm the district court's holding. If the court finds that personal jurisdiction exists, then Mr. Hifter contends that the district court erred in denying the remaining parts of his summary judgment motion and the court's order should be affirmed on the alternative grounds of standing, color of law, command responsibility, torture, adequate remedies in Libya, and subject matter jurisdiction. Of those, which one would you say is the strongest? Say hypothetically that I'm not super excited about considering, like, seven alternative grounds for affirmance. Which of those would you say you think is the best one? The standing argument, Your Honor. So the TVPA gives standing to very specific parties. The plain language states liable for damages to the individual's legal representative or to any person who may be a claimant in an action for wrongful death. Courts look to state law for guidance on who may be a proper wrongful death claimant. In Virginia, a wrongful death claimant must be a personal representative who is qualified in Virginia specifically. The plain language of the TVPA does not state the word beneficiary. Therefore, we must apply the Virginia standard of who can be a wrongful death claimant, which is a personal representative in Virginia. We do not have that here. The plaintiffs have failed to provide any evidence through any jurisdiction that a personal representative has been appointed. The entire purpose of having a singular individual represent a wrongful death claim is to avoid double recovery. Here, multiple plaintiffs are attempting to attach liability, which goes against the heart of a wrongful death claim. Further, if we look to Virginia law, it is a necessity that cannot be fixed if a party sues without filing as a personal representative. It is a legal nullity, and the law is clear that individuals must qualify in Virginia. If the court is not persuaded that they must also be qualified in Virginia, at minimum it must require the plaintiffs to provide evidence of standing. They must show that they are, in fact, the sole surviving beneficiaries of the decedents. The ramifications of ruling otherwise would allow for any party to come to this court and sue under the TVPA without proof of death or without evidence of who is the surviving family members. In the Al Swade case, the appellants are suing as personal representatives, but there is no evidence provided that the plaintiffs have standing. Again, under Virginia law, foreign administrators must also qualify in Virginia. Similarly, in El Zagali, numerous plaintiffs are attempting to claim standing for the death of one individual. This was not the purpose of the TVPA, and the court should bar numerous parties from suing on behalf of one individual's death. In addition, the second alternative ground that we raise is color of law. A crucial element of the TVPA is that the individual acted under apparent actual authority or under the color of law of a foreign nation. It's the plaintiff's burden to prove this element, and the record doesn't support it. In the Al Swade case, the events occurred in 2014 when Mr. Hifter did not take power until 2015, which the record fully discloses that, and appellants have conceded to that. The various plaintiffs in this proceeding oversee three different events over the course of five years of conflict. It is evident that no one in the East was able to act under the color of law of a foreign nation in 2014. At that time, the GNA, the General National Accord, wasn't even fully in power. Libya was truly in the heart of the civil war at the time, with thousands of factions and civilians fighting in the streets. Your Honors, I see I'm out of time, and I have five minutes for rebuttal. Thank you, Counsel. You have some time on rebuttal. Thank you. We'll hear from appellants. Thank you again. Awesome. Go forward again for the appellant. I would like to rebut two of the main points. One is, there's been no case law that I've found where a plaintiff waives personal jurisdiction under 4K2. There was a case I found here in the Fourth Circuit, and I didn't appropriately cite it because I just discovered it last night, where under certain cases, if you don't even allege, like, how does a plaintiff waive jurisdiction? I mean, we sued Haftar because we believe we have jurisdiction over him. So there was really no element whether we use a long-arm statute in 4K1 or whether 4K2 doesn't make a difference, in our opinion. But hasn't the Supreme Court repeatedly said it is the burden of the party asserting jurisdiction to establish the existence of jurisdiction? Your Honor, absolutely. We did not – we brought the lawsuit in Virginia because we asserted – to explain why the court has jurisdiction, because if the party doesn't do that, the court will assume it doesn't have jurisdiction. That's at least how I understand that. Yeah. What I understood is, what I did not find cases on is, if you don't allege it under 4K2, for example, if you don't specifically say that there's jurisdiction under 4K2, there's no real waiver of that. Aren't those arguments kind of – you can argue in the alternative, but they're mutually exclusive, right, to say under Virginia's long arm, like, he has enough contacts with Virginia, like, Virginia has jurisdiction over him, is contrary to 4K2, right, which says you have to prove he doesn't have contacts with any state sufficient to have jurisdiction. That's like a prerequisite for 4K. So I take your point that, like, maybe you don't waive it by not citing a certain provision, but you can argue in the alternative, but if you only argue one, you seem to be excluding the possibility of the other. That's the dilemma we're in, Your Honor. If we had come out saying 4K2, which was not our intent. Our intent was he lives in Virginia. He had property in Virginia. We always felt that he was of Virginia. But the counsel in their argument, my opposing counsel, just said that we waived 4K2, and I just wanted to alert the panel, we don't really see it as a waiver. It's just something we never brought up. So it's a forfeiture, not a waiver? No, it's neither. Well, it's something which if the panel decides that there was no jurisdiction under Virginia and remands it back, and, you know, then we ---- No, if we decide there's no jurisdiction under Virginia with the possible wrinkle of with or without prejudice, we just affirm.  Or if you remand it back to dismiss with prejudice, without prejudice, for example. Or if you do remand it back for jurisdictional discovery, then, you know, we just keep all our rights available because we still believe that we have it under ---- we have jurisdiction in Virginia. But if we do have to reallege it, one of the contracts was signed with a D.C. law firm. We can visit that later. Do you agree that ---- so let's focus specifically on the jurisdictional discovery. Yes. Do you agree that a district court's decision to give you or not give you more discovery is reviewed for abuse of discretion? Sorry, what was that? Whether a district court error in not giving you more discovery or more time for discovery, that's reviewed for abuse of discretion, right? Yes, Your Honor. So why was it an abuse of discretion for Judge Brinkman to say this case has been going on for four years, you've already deposed the defendant, the time for more jurisdictional digging is over? Well, because we never asked ---- we never asked about jurisdictional questions. Our deposition we focused on ---- But that's not the district court's fault. I mean, the district court could say you had a chance to depose him. Any questions you wanted to ask him, including jurisdictional ones you could have asked him. Right. Well, once he had waived jurisdiction, we relied on the Rule 12-H1. Once it was waived, we just proceeded with discovery on the merits. And while I'd love to litigate color of law and command authority, that's not ripe for the record here. And we would ask the court on that issue to also dismiss the cross-appeal because that was Judge Brinkman did not even rule on any of our summary judgment motions. So we didn't ---- we focused on that because we were hoping to have a trial. First, with the default judgment, we're going to have a trial just on damages. And then, you know, when he came back and, you know, he availed himself of the court, and then we planned that now we will have a trial on the merits, and we welcome the trial on the merits. So whether the court decides, you know, whether this court, Pamela, decides to overrule Judge Brinkman and allow a trial, we welcome that. Our appellants want their day in court. But we also reserve all our rights to be able to bring up all these arguments. Well, does it make any difference? We're not talking about at the 12-B stage. We're talking about the summary judgment stage. Your Honor, in the cross-appeal, they brought up summary judgment, but Judge Brinkman never ruled on anything in summary judgment. She circumvented it. My time has expired. May I answer the question?  Yeah. The judge, if you read her transcript, at the time we filed the joint appendix, the Eastern District of Virginia had just issued the transcript of Judge Brinkman. So it made its way in the record in the last minute. And if you read all 15 pages of her transcript, she said there's complex facts, but there's no jurisdiction. So we believe she kind of indirectly denied all of our motions to dismiss for summary judgment because she said they're complex facts, but she never ruled on it. And we don't believe it's ripe for the record. All right. Thank you, Counsel. Okay. Thank you. Appley has some time. Your Honors. Your colleague just said something that I pinged something in my head. Can you explain to me how this is a cross-appeal at all? So the district court dismissed the suits against your client. I presume that she gave you a dismissal with prejudice, right? Is that correct? Correct, Your Honor. And that is what your client wanted, was a dismissal with prejudice, right? Correct, Your Honor. So in what sense are you seeking to modify the judgment? We're seeking an alternative grounds for appeal. But that's not a cross-appeal. That's just defending the judgment on alternative grounds. Your Honor, we filed on alternative grounds. Okay. But I guess the question is, so Judge Brinkema, as I read her orders in all three cases, she dismissed the claims against your clients with prejudice, right? Correct, Your Honor. Do you wish to modify that judgment in any way, shape, or form? No, Your Honor. Okay. Thank you. You can still have your rebuttal time. You probably shouldn't get it, but we'll let you have it. I'll be brief, Your Honor. Let me follow up on the question I asked your colleague. Was this a summary judgment hearing or not? Yes, Your Honor. This was a summary judgment hearing. The district court held that the remaining grounds for summary judgment for both parties had material facts in dispute. Therefore, she denied the remaining parts of the summary judgment. So she only granted the summary judgment for the defendant, Mr. Hifter, on the grounds for personal jurisdiction. But she did it with prejudice. With prejudice, yes, Your Honor. Do you think that's right? I mean, she doesn't have jurisdiction. How can she make an affirmative judgment with prejudice as an affirmative ruling by her on the case? Your Honor, on the appellant's request for jurisdictional discovery at the district level, the court found that no further discovery was necessary. Therefore, that is the reasoning in the transcript for why it was dismissed with prejudice. Your Honors, my only last comment would be that the alternative grounds were not argued against besides command responsibility and head of state immunity by the appellants. Therefore, the arguments are waived. And for the above-mentioned reasons, we respectfully request that this court affirm the district court's holding and dismissal process. Thank you, Your Honors. Thank you both for your arguments. After our courtroom deputy adjourns us, we'll come down and greet counsel, and then you can approach the bench to greet the rest of the panel. The honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Allison J. Rushing, Toby J. Heytens, Henry F. Floyd